ROBERT M. FARRIS-OLSEN (LEAD)
SCOTT PETERSON
MORRISON SHERWOOD WILSON & DEOLA, PLLP
401 North Last Chance Gulch
Helena, MT  59601
(406) 442-3261 Phone
(406) 443-7294 Fax
rfolsen@mswdlaw.com
speterson@mswdlaw.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| STEVEN PALMER d/b/a MONTANA ORGANIC MEDICAL SUPPLY, <br><br> Plaintiffs, <br><br> v. <br><br> MONTANA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DARCI WIEBE in her individual and official capacity; JAMIN GRANTHAM, in his individual and official capacity; CITY OF BILLINGS; STEVE HALLAM in his individual and official capacity; and JOHN DOES 1-10. <br><br> Defendants. | Cause No.  CV-21-38-BLG-SPW-TJC <br><br><br> **COMPLAINT AND JURY DEMAND** |

Comes now, Steven Palmer d/b/a Montana Organic Medical Supply

("MOMS") and for his complaint against the Montana Department of Health and

Human Services ("DPHHS"), Darcy Wiebe, Jamin Grantham (collectively, "defendants"), and the City of Billings and Steve Hallam, states and alleges as follows:

## PARTIES

1. Steve Palmer is a resident of Helena, Lewis and Clark County, Montana and is a licensed medical marijuana provider. His business, MOMS operated a cultivation facility near Emigrant, Montana and a dispensary – at issue here – in Billings, Yellowstone County, Montana.

2. DPHHS is the Montana State entity responsible for licensing individuals as medical marijuana providers, as well as overseeing and regulating Montana's medical marijuana industry.

3. Darcy Wiebe, at the time of the events outlined below, was the Bureau Chief of the Montana Medical Marijuana Program within DPHHS

4. Jamin Grantham, at the time of the events outlined below, was an employee and inspector for DPHHS' Medical Marijuana Program.

5. The City of Billings is a political subdivision of the State of Montana that is authorized to control and operate and maintain the Billings Police Department, BPD, which acts on the City of Billings' behalf in the area of law enforcement. Accordingly, the City is ultimately responsible for the BPD and its actions.

6. Steve Hallam was, at all times relevant to this complaint, a detective with the Billings Police Department.

7.      John Does 1-10 are unnamed defendants, who may have been involved in this matter.

## JURISDICTION and VENUE

8.      The actions alleged herein took place in Billings, Yellowstone County, Montana, and are against the State of Montana and Montana public officers, and the City of Billings and its employees. Therefore, venue is proper in Yellowstone County pursuant to §§ 25-2-125, -126, MCA, and Local Rule 3.2(b).

9.      As alleged below, various public officers violated MOMS rights guaranteed by the United States Constitution, thereby giving rise to claims under 42 U.S.C. § 1983. As such, this Court has jurisdiction as a federal question under 28 U.S.C. § 1331 and as a civil rights claim pursuant to 28 U.S.C §§ 1343(a)(3) and 1343(a)(4).

10.     This Court has supplemental jurisdiction over MOMS's state law claims under 28 U.S.C. § 1367 because they arise from the same set of operative facts, and are interrelated with the claims under 42 U.S.C. § 1983.

11.     On September 9, 2020, in accordance with § 2-9-301, MCA, notice of the claims against DPHHS and the state employees was provided to the State. More than 120 days have elapsed since the State received notice.

## FACTS

12.     Steve Palmer has been a licensed medical marijuana provider since 2011.

13.     His business, MOMS, operated a cultivation facility near Emigrant, Montana, and a dispensary previously located at 2918 Grand Avenue in Billings, Montana.

14. In June 2018, DPHHS inspected Mr. Palmer's cultivation facility and dispensary.

15. The inspections were triggered by complaints against the MOMS's dispensary in Billings.

16. On or about June 13, 2018, DPHHS inspected the cultivation facility.

17. On or about June 15, 2018, DPHHS inspected the dispensary.

18. In response to the complaints, DPHHS also sought to determine if Mr. Palmer was in compliance with the new regulations that took effect on April 1, 2018.

19. On or about July 25, 2018, DPHHS issued its inspection report.

20. The inspection report noted a few areas of concern including statutory and administrative violations.

21. Pursuant to the July 25, 2018, inspection report, MOMS was required to provide proof that the violations had been rectified no later than September 18, 2018.

22. The July 25, 2018, report did not identify any violations that required corrective action before September 18, 2018.

23. MOMS did not receive the report until on or about August 7, 2018.

24. On or about August 13, 2018, DPHHS and Wiebe served its Order Revoking Provider License and Notice for Judicial Review (the "Order") on the manager of the MOMS's dispensary.

25. The Order was served by a DPHHS representative accompanied by Billings Police Officers.

26. Prior to issuing the Order, MOMS was never notified of DPHHS and Wiebe's intent to revoke the provider license and close the business.

27. In fact, the Order did not contain any finding that "public health, safety, or welfare imperatively requires emergency action" warranting a summary suspension or revocation of MOMS's license. *See* § 2-4-631, MCA.

28. The Order also did not allege that MOMS had violated § 50-46-330(1)(b)(ii) (2017), MCA, which would have ostensibly let DPHHS and Wiebe immediately revoke the license.

29. DPHHS issued the Order in violation of its own regulations, which permit a license to be revoked *only* after "written notice" is provided. Admin. R. Mont. 37.107.130.

30. The Order was served even though MOMS had more than a month left to take corrective actions.

31. The Order required the following:

   a. Revocation of Mr. Palmer's license.

   b. Surrender of Montana Medical Marijuana Program Agent Badges.

   c. Cease taking new registered cardholders.

   d. Cooperation in notifying registered cardholders of the revocation and the need to transfer to another licensed provider.

   e. Cease all production and/or sale of marijuana and marijuana related products.

  f. Cooperation in accounting for all medical marijuana plants, and in destroying all medical Marijuana plants.

  g. Cooperation in accounting for all medical marijuana products.

32. After the revocation Order, Mr. Palmer was given no opportunity for a hearing to contest the revocation, and DPHHS made no effort to provide a hearing.

33. Rather, DPHHS advised him his only remedy was for judicial review and cited the Montana Administrative Procedures Act, § 2-4-702(2), MCA, for the proper appeal procedure.

34. In addition to serving the Order on MOMS, DPHHS sent letters to 841 of MOMS's medical marijuana cardholders on or about August 13, 2018.

35. The August 13, 2018, letter advised the cardholders that they could no longer obtain medical marijuana from MOMS.

36. The practical effect of the Order was to immediately close MOMS.

37. Before the closure MOMS had 10 full-time employees, 841 clients who were medical marijuana card holders, generated sales of over $300,000 a quarter, and the dispensary netted nearly $4,000 per day.

38. DPHHS renewed Mr. Palmer's license on or about May 29, 2018, and MOMS was engaged in merger negotiations with another Montana medical marijuana provider, Lionheart.

39. The merger would have further increased MOMS's profits.

40. Following the revocation, on or about September 12, 2018, MOMS filed a petition for judicial review of DPHHS' revocation in Montana's Thirteenth Judicial District Court, Yellowstone County, Cause No. DV-18-1418.

41. On the Motion of MOMS, Judge Harris[1] granted a temporary restraining order restraining enforcement of the Order.

42. Subsequently, Judge Harris issued his findings of fact and conclusions of law regarding due process.

43. In his order, Judge Harris determined that the revocation Order was unlawful, and enjoined its enforcement.

44. Judge Harris ordered the parties to begin forming the relief to which MOMS was entitled.

45. After a few more months, the Parties agreed that the District Court case should be dismissed to allow MOMS to pursue a damages action.

46. Thereafter, Judge Davies dismissed the matter without prejudice on or about Friday, March 8, 2019. Judge Davies' order did not mention the revocation of MOMS's license or what happened with respect to the injunction stopping its enforcement.

---

[1] The case was filed in Department 7 with Judge Colette Davies, but Judge Harris oversaw the temporary restraining order and due process issues because Judge Davies was unavailable.

47. The following Tuesday, on or about March 12, 2019, Mr. Grantham emailed the Billings Police Department and advised them that MOMS did not have a valid license to operate as a medical marijuana dispensary and so it was no longer lawful for MOMS to sell medical marijuana or marijuana products.

48. Mr. Grantham made this contact with law enforcement knowing that two judges had found the revocation unlawful.

49. As before, DPHHS did not provide MOMS notice or a hearing that its license revocation was reinstated, it did not give MOMS the opportunity to wind down its business, or the opportunity dispose or destroy any remaining product.

50. On or about March 19, 2019, Mr. Grantham further advised the Billings Police Department that the petition for judicial review of the revocation order had been dismissed on January 29, 2019, and the revocation Order was now in effect.

51. Mr. Grantham gave the Billings Police Department a copy of the order from Judge Davies, which explicitly states, multiple times that the revocation Order was "unlawful".

52. Also, on or about March 19, 2019, police began surveilling MOMS and observed a man, Aaron Wolf, leave the shop and give his girlfriend, Sierra Mann, a small baggy.

53. Police followed Ms. Mann until she committed a traffic infraction, at which point they pulled her over. Both were registered cardholders.

54. The Billings Police then continued surveilling MOMS and observed three individuals abruptly leave the facility.

55. At that point, Billings Police stopped the individuals and interviewed them. All three advised law enforcement that there was marijuana at MOMS.

56. Based on Ms. Mann's and the three other individuals' testimony, the Billings Police obtained a search warrant.

57. In the application for the warrant, Detective Hallam testified a District Court Judge had upheld Mr. Palmer's license revocation, and that MOMS was illegally selling marijuana without a license. These facts were untrue.

58. At the time Det. Hallam applied for the search warrant he was in possession of Judge Davies' order stating that the revocation was improper.

59. Detective Hallam received the search warrant from the District Court and proceeded to search MOMS's dispensary.

60. In the search, the Billings Police Department seized various marijuana products, a laptop, documents, computer hard drive and other various personal belongings.

61. Throughout the actions outlined above, Ms. Wiebe, Mr. Grantham and Detective Hallam, were acting under the color of state law.

62. The seized marijuana and marijuana products were never returned to MOMS.

63. In all, MOMS suffered significant damages, including, but not limited to, loss of revenue, loss of inventory, and loss of the business.

## CLAIM AGAINST DPHHS, WIEBE & GRANTHAM

## COUNT I – 42 U.S.C. § 1983

64. The preceding paragraphs are realleged as though set forth in full hereunder.

65. At all relevant times, MOMS had a right under the due process clause of the United States' Constitution not to be deprived of its constitutionally protected due process rights. As a result of Wiebe and Grantham's deliberate (or at a minimum reckless) conduct, MOMS was deprived of those rights.

66. Because MOMS had a property interest in the medical marijuana license, it was entitled to due process before the license was revoked.

67. Plaintiff was not afforded that due process.

68. Wiebe articulated no justifiable reason for stripping the license without due process.

69. Wiebe intentionally and deliberately (or alternatively, with disregard for Plaintiff's rights) also violated Admin. R. Mont. 37.107.130, requiring the Department to provide notice of a pending revocation.

70. Wiebe did not provide this notice. DPHHS issued its report requiring corrective action, but that action was not required to be completed until September 18, 2018. But on August 13, 2018, Wiebe revoked MOMS's license, without any notice.

71. Wiebe also exceeded her authority by revoking MOMS's license without a hearing or notice. She therefore violated Plaintiff's due process rights by acting in

ways without any statutory or administrative authority for his actions. Simply put, Wiebe violated the Plaintiff's rights by abusing her government power and authority.

72. Wiebe and Grantham also exceeded their authority by failing to reinstate MOMS's license and advising law enforcement that the District Court had upheld the revocation, when that was untrue.

73. Wiebe made a decision to continue acting as though MOMS's license was revoked, despite two District Court Judges, and two orders, explaining that the revocation was unlawful.

74. Put another way, Wiebe knew her revocation Order was unenforceable, yet she continued to enforce it without any legal justification for doing so.

## COUNT II – NEGLIGENCE/NEGLIGENT MISREPRESENTATION

75. The preceding paragraphs are realleged as though set forth in full hereunder.

76. The DPHHS, Wiebe and Grantham had a duty to avoid taking unreasonable acts that would cause MOMS's injury.

77. Defendants also had a duty to reasonably follow the law and reasonably act within the bound of the law. Defendants breached this duty when it exceeded the scope of statutory and administrative rules in conducting their obligations and did so without any reasonable justification.

78. DPHHS, Wiebe and Grantham violated these duties by taking actions (or by their agents taking actions) that exceeded their authority and jurisdiction and taking

those actions without any reasonable basis believing the actions were necessary or allowed.

79. Defendants further violated these duties by representing to MOMS that they had until September 18, 2018, to cure any alleged statutory or administrative violations found at MOMS's dispensary or the cultivation cite. Indeed, Defendants made this statement in writing.

80. Defendants further violated their duties by emailing the Billings Police Department and giving them false information that that the District Court had approved the license revocation and that MOMS was illegally selling marijuana and marijuana infused products.

81. As a direct and proximate result of the DPHHS, Wiebe and Grantham's actions, MOMS has been damaged.

## COUNT III – TORTIOUS INTERFERENCE (cardholders)

82. The preceding paragraphs are realleged as though set forth in full hereunder.

83. As of August 13, 2018, MOMS was a provider for 841 Montanans with medical marijuana cards. For each of these cardholders, MOMS was required to have a written agreement signed by the cardholder that indicated MOMS would be their medical marijuana provider. Section 40-46-308(1)(a)(iv) (2017), MCA.

84. These agreements constituted contracts between MOMS and each cardholder.

85. On August 13, 2018, DPHHS intentionally and willfully advised each of the 841 cardholders that MOMS's license was being revoked and they needed to find a

new provider. After the revocation, the cardholders no longer used MOMS as their provider. In other words, they refused performance under the contracts.

86. These actions were taken to purposefully re-route MOMS's clients, and cause MOMS to stop selling marijuana and marijuana infused product – or to cause MOMS harm.

87. The cardholders' refusal was based on DPHHS' unlawful revocation of MOMS's license, and subsequent letter to each cardholder.

88. As a result of these actions, MOMS suffered substantial economic damages.

89. DPHHS is, therefore, liable for its tortious interference with MOMS's contractual relationship with its cardholders.

## COUNT IV – TORTIOUS INTERFERENCE (Lionheart)

90. The preceding paragraphs are realleged as though set forth in full hereunder.

91. In the summer of 2018, MOMS was engaged in a merger with Lionheart, the merger was to be completed by the end of July 2018.

92. The parties had agreed on merger language and Lionheart had signed all the agreements. MOMS had performed their obligations as well, but had not yet signed the agreements – performance was complete.

93. However, as a result of DPHHS' actions, the merger fell apart. So MOMS was left with no way to continue its operations either on its own, or through a merger.

94. As a result of these actions, MOMS suffered substantial economic damages.

## COUNT V – DEFAMATION

95.  The preceding paragraphs are realleged as though set forth in full hereunder.

96.  DPHHS, Wiebe and Grantham, made false statements in writing to the Billings Police Department regarding Judge Davies' orders, and the status of MOMS's revocation.

97.  The communications were not privileged, and had the natural tendency to cause harm to MOMS.

98.  As a result of the false statements, MOMS was damaged.

## COUNT VI – *Dorwart* CLAIMS

99.  The preceding paragraphs are realleged as though set forth in full hereunder.

100.  DPHHS is a state actor and subject to the Montana Constitution.

101.  MOMS is a person protected by the Montana Constitution.

102.  These rights include the right to privacy; the right to due process; right to pursue life's basic necessities (and therefore, the right to work); and the right to be free from illegal search and seizures.

103.  Based on the facts previously alleged, DPHHS violated these state constitutional rights.

104.  These violations caused MOMS' damages.

## COUNT VII – CONSPIRACY

105.  The preceding paragraphs are realleged as though set forth in full hereunder.

106. Defendants DPHHS, Wiebe and Grantham engaged in a concerted action with the intention to accomplish an unlawful objective of causing harm to another.

107. Defendants DPHHS, Wiebe and Grantham, by and through their conduct, caused harm to MOMS.

## COUNT VIII – PUNITIVE DAMAGES

108. Wiebe and Grantham's actions described above were motivated by evil motive or intent. At a minimum, their actions were reckless or callously indifferent to the federally protected rights of the MOMS.

109. Thus, Wiebe and Grantham are liable for punitive damages for their violations of federally protected rights.

## CLAIM AGAINST CITY OF BILLINGS AND HALLAM

## COUNT IX – 42 U.S.C. § 1983

110. The preceding paragraphs are realleged as though set forth in full hereunder.

111. At all relevant times, MOMS had a right under the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures.

112. Detective Hallam violated MOMS's U.S. Constitutional right against unreasonable searches by obtaining a search warrant for the MOMS's dispensary through judicial deception.

113. At the time Detective Hallam complied his affidavit for the search warrant associated with MOMS's dispensary, he was in possession of Judge Davies' order dismissing MOMS's petition for judicial review without prejudice.

114. The language in Judge Davies' order made clear that DPHHS' revocation Order was "unlawful and lacked any legal or equitable justification" and that MOMS would be allowed, through a separate suit, to "seek full redress for the abrupt and unlawful license revocation."

115. Thus, Detective Hallam was at all times aware Judge Davies had determined the revocation Order was unlawful, so any further attempts by DPHHS to enforce that revocation Order were also unlawful.

116. Nevertheless, on March 19, 2019, Detective Hallam applied to the District Court for a search warrant covering MOMS' dispensary.

117. In the application for the warrant, Detective Hallam stated that the revocation of MOMS' license was upheld by the District Court and that he had the "Court documentation/ruling."

118. This representation constitutes judicial deception through omission and false representations.

119. Detective Hallam omitted critical facts, including, but not limited to, the fact that both Judge Davies and Judge Harris had found the order of revocation unlawful and lacked any legal justification.

120. Instead, Detective Hallam affirmatively represented that the district court had upheld the revocation Order.

121. These omissions and representations were made deliberately, or at a minimum recklessly. Detective Hallam had physical possession of the order from Judge Davies

16

that described DPHHS' revocation Order as unlawful. And even a brief reading of the document makes clear that Mr. Grantham's statement that the district court upheld the revocation order was untrue.

122. These omissions and falsities were material; the entire warrant was based on MOMS no longer having a provider license.

123. Taking Detective Hallam's false statements and omissions into account, there was no probable cause for a warrant, and the search of MOMS was unreasonable under the Fourth Amendment to the United States Constitution.

124. As a result of Detective Hallam's violations of MOMS's constitutional right to be free from unreasonable searches and seizures, MOMS suffered damages.

## COUNT X – *Dorwart* CLAIMS

125. The preceding paragraphs are realleged as though set forth in full hereunder.

126. The City of Billings is subject to the Montana Constitution.

127. MOMS is a person protected by the Montana Constitution.

128. These rights include the right to privacy and the right to be free from illegal search and seizures. These protections are broader under the Montana constitution than under the U.S. Constitution.

129. Based on the facts previously alleged, the City of Billings violated these state constitutional rights by engaging in an illegal search of the MOMS's dispensary.

130. These violations caused MOMS's damages.

## COUNT XII – TRESPASS

131. The preceding paragraphs are realleged as though set forth in full hereunder.

132. Detective Hallam unlawfully trespassed on MOMS's dispensary property

133. Detective Hallam's entry on to the property was unreasonable and unauthorized based on his omissions and false representations used to obtain the search warrant.

134. MOMS has been injured by such trespass.

## COUNT XII – CONVERSION

135. The preceding paragraphs are realleged as though set forth in full hereunder.

136. During Detective Hallam's search of MOMS's dispensary he took possession of various inventory.

137. This possession was unauthorized based on the wrongfully obtained search warrant.

138. After the claims against Shawn Palmer were dismissed, the inventory was not returned to MOMS.

139. Neither Detective Hallam nor the City of Billings compensated MOMS for the inventory that was taken and never returned.

## COUNT XIII – PUNITIVE DAMAGES

140. Hallam's actions described above were motivated by evil motive or intent. At a minimum, their actions were reckless or callously indifferent to the federally protected rights of the MOMS.

141. Thus, Hallam is liable for punitive damages for their violations of federally protected rights.

WHEREFORE Plaintiff prays:

1. That MOMS be awarded all compensatory damages (including financial past and future financial losses, emotional distress, loss of reputation, and any and all other losses available under Montana law and applicable here) in an amount to be proven at trial;

2. Punitive damages against Wiebe, Grantham, and Hallam for their violations of federal constitutional rights;

3. That MOMS be awarded attorneys' fees and the cost of this suit;

4. For such other and further relief as the Court deems just under the premises.

Dated this 6th day of April, 2021.

            MORRISON, SHERWOOD, WILSON & DEOLA

            By: /s/ Robert Farris-Olsen
              Robert Farris-Olsen
              *Attorneys for Plaintiff*