IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| STEVEN PALMER d/b/a MONTANA ORGANIC MEDICAL SUPPLY,<br><br>          Plaintiff,<br><br>vs.<br><br>MONTANA DEPARTMENT OF HEALTH AND HUMAN SERVICES; DARCI WIEBE in her individual and official capacity; JAMIN GRANTHAM, in his individual and official capacity; CITY OF BILLINGS; STEVE HALLAM in his individual and official capacity; and JOHN DOES 1-10,<br><br>          Defendants. | CV 21-38-BLG-SPW-TJC<br>  Consolidated with Member<br>  Case: CV 22-25-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

        This action arises out of the revocation of Plaintiff Steven Palmer d/b/a

Montana Organic Medical Supply's medical marijuana provider license.  Presently

before the Court are Plaintiff's Motion for Collateral Estoppel (Doc. 74), Plaintiff's

Motion for Partial Summary Judgment on Count II and VI (Doc. 79), and the

State's Motion for Summary Judgment (Doc. 80).[1]  The motions are fully briefed

and ripe for the Court's review.

---

[1] Plaintiff's Motion for Collateral Estoppel and Motion for Partial Summary
Judgment on Count II and VI were also filed in Member Case CV-22-25-BLG-
SPW-TJC at Docs. 33 and 38.  The motions in the Member Case are identical to

Having considered the parties' submissions, the Court **RECOMMENDS** Plaintiff's Motion for Collateral Estoppel be **DENIED**; Plaintiff's Motion for Partial Summary Judgment be **DENIED**, and the State's Motion for Summary Judgment be **GRANTED in part and DENIED in part**.

## I.    BACKGROUND[2]

Plaintiff became a licensed medical marijuana provider in 2011, and he renewed his license in May 2018. (Doc. 82-2 at ¶ 1, 82-26 & 27.) Under his 2018 license, Plaintiff was authorized to cultivate marijuana and operate a marijuana dispensary. Plaintiff's cultivation property was located at 2896 US Highway 89 S, Unit A, Emigrant, Montana. (Doc. 82-27.) His dispensary was located in Billings Montana. (Doc. 82-26.)

On June 13, 2018, the Montana Department of Health and Human Services (DPHHS) inspected the cultivation facility, and it inspected the dispensary on June 15, 2018. (Doc. 89 at ¶ 7.) Both inspections were conducted by DPHHS inspectors Jamin Grantham and Kim Speckman. (*Id.* at ¶ 8.)

On June 18, 2018, Grantham wrote a memo to Medical Marijuana Bureau Chief Darci Wiebe, summarizing the inspections, and recommending "that Steven

---

the motions in this Lead Case. Therefore, this Findings and Recommendations addresses all pending motions in the consolidated actions.

[2] The background facts set forth here are relevant to the Court's determination of the pending motions and are taken from the parties' submissions and are undisputed except where indicated.

Palmer's provider and dispensary license be revoked immediately." (Doc. 78-5 at 5.)

Prior to any action on the recommendation, Plaintiff sent an email to DPHHS and others on July 19, 2018, advising of his intention to relinquish his provider's license. Plaintiff stated that he intended to merge with another provider, Lionheart Caregivers, by July 25, 2018, and "[e]ffective on that date, I choose to relinquish my status as an independent Provider . . . ." (Doc. 82-31.)

DPHHS issued a Registered Premise Inspection Report on July 25, 2018, which Plaintiff received on or about August 7, 2018. (Doc. 78-4; Doc. 82-2 at ¶ 21.) The Inspection Report identified seven areas of concern, five statutory violations and five administrative violations. (Doc. 78-4 at 6-8.) The "Corrective Action Items" section of the Report stated "[p]lease provide proof by no later than 9.18.18 that all violations have been rectified." (*Id.* at 8.)

On August 13, 2018, however, Wiebe issued an Order Revoking Provider License and Notice for Judicial Review ("Revocation Order"), that immediately revoked Plaintiff's license. (Doc. 75-3.) The Revocation Order was based on the same code violations that were noted in the Inspection Report. (*Id.*; Doc. 78-4.)

Upon receipt of the revocation order, Plaintiff again emailed Darci Wiebe and expressed his surprise in receiving the order, "particularly because [on] July 19, 2018, I sent the Department formal notification that I was relinquishing my

3

license, effective July 25." (Doc. 82-31.)  Plaintiff advised that the merger with Lionheart was incomplete, but he stated: "I don't consider myself a licensed Provider at this time or since the end of last month." (*Id.*)

Nevertheless, Plaintiff subsequently filed a petition for judicial review in Montana's Thirteenth Judicial District Court, Yellowstone County on September 12, 2018. (Doc. 75 at 13-16.)  On September 14, 2018, District Court Judge Harris granted a temporary restraining order, pursuant to Mont. Code Ann. § 2-4-702(3), staying revocation of Plaintiff's license pending a hearing on the matter. (Doc. 75-2.)  Judge Harris further found that Plaintiff's motion "satisfies the requirements of Mont. Code Ann. § 27-19-315 and can be issued without notice to [DPHHS]." (*Id.*)  Judge Harris set a hearing on the matter for September 19, 2018. (*Id.*)

At the hearing, both Plaintiff and DPHHS appeared with counsel. (Doc. 75-4.)  Plaintiff, Wiebe and Grantham provided testimony, and counsel presented oral argument. (*Id.*)  Following the hearing, Judge Harris gave the parties additional time to submit further briefing. (*Id.* at 119-120; Doc. 75-3.)

On October 1, 2018, Judge Harris issued Findings of Fact and Conclusions of Law and Order. (Doc. 75-5.)  Judge Harris made several factual and legal findings, and stated "the Revocation Order is unlawful and should be reversed." (*Id.* at 10.)  Judge Harris noted, however, that it was unclear what remedy Plaintiff sought. (*Id.*)  Thus, Judge Harris stated that "[b]efore issuing a final judgment, the

Court requires additional information from the parties." (*Id.*)  Judge Harris also

continued the stay of enforcement of the August 13, 2018 Revocation Order

"[u]ntil further Order of the Court." (*Id.*)

Prior to the issuance of any further order, however, the parties agreed to

dismiss the petition, and District Court Judge Davies dismissed the matter without

prejudice on March 8, 2019.[3]  (Doc. 75-6.)  In the order, Judge Davies noted that

"the parties agree that this Petition for Judicial Review is not the proper

mechanism to afford Petitioner full redress for the harm caused by the

revocation[.]" (*Id.* at 3.)  She further stated that the "Court's prior rulings set forth

in the Findings of Fact, Conclusions of Law, and Order dated October 1, 2018 are

incorporated herein." (*Id.* at 3-4.)

On April 6, 2021, Plaintiff initiated this action.  (Doc. 1.)  Plaintiff's pending

claims against the State include negligence/negligent misrepresentation (Count II),

tortious interference (Counts III-IV), defamation (Count V), *Dorwart* claims

(Count VI), and conspiracy (Count VII).

## II.    COLLATERAL ESTOPPEL

Plaintiff moves for collateral estoppel in conjunction with his motion for

partial summary judgment.  Plaintiff argues Judge Harris' October 1, 2018 Order

---

[3] Judge Davies took over the case after she became a judge in the 13th Judicial
District Court, Yellowstone County.

resolved many of the issues now before the Court, and therefore, the State should be collaterally estopped from relitigating or disputing certain findings and conclusions of law found within Judge Harris' Order. The State counters that collateral estoppel does not apply.

Federal courts must give the same collateral estoppel and res judicata effects to the judgment of state courts, as the state itself would. 28 U.S.C. § 1738; *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1007 (9th Cir. 2007). Therefore, the relevant test here "is whether the state court decision 'meets the state's own criteria necessary to require a court of that state to give preclusive effect' to the decision." *Id.* (quoting *Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006)).

Collateral estoppel (issue preclusion) and res judicata (claim preclusion) "are doctrines that embody a judicial policy that favors a definite end to litigation." *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1273 (Mont. 2006). Plaintiff asserts the application of collateral estoppel, which "bars the reopening of an issue that has been litigated and resolved in a prior suit." *Adams v. Two Rivers Apartments, LLLP*, 444 P.3d 415, 419 (Mont. 2019). In Montana, collateral estoppel applies when the following are met: (1) the identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom collateral estoppel is now asserted was a party or in privity with a party to the prior adjudication; and (4) the party against

whom preclusion is asserted must have been afforded a full and fair opportunity to litigate any issues which may be barred.  *Id.* at 1274.  Each of these elements will be discussed below.

### A. Identical Issues/Parties

The parties do not contest that the issues decided in Judge Harris' Order are the same as the issues raised in the present case.  There is also no dispute that the State was a party to the previous litigation.  The first and third elements are therefore satisfied.

### B. Final Judgment on the Merits in the Prior Adjudication

Plaintiff asserts Judge Harris' Order, which was incorporated into Judge Davies' dismissal order, constitutes a final judgment for purposes of collateral estoppel.  The State counters that Judge Harris' Order cannot be considered a final judgment.

Judge Davies' order, voluntarily dismissing the state court matter without prejudice, is not a final judgment.  *Farmers Union Mut. Ins. Co. v. Bodell*, 197 P.3d 913, 916 (Mont. 2008) ("[A]n order dismissing or striking a complaint without prejudice is not a final judgment.").  Therefore, the fact Judge Harris' Order was incorporated into Judge Davies' dismissal order did not convert it into a final judgment on the merits.

7

Nevertheless, in *Baltrusch*, the Montana Supreme Court adopted a "relaxed requirement of finality for purposes of applying collateral estoppel." *Id.* at 1275. The Court held the following factors should be considered in deciding whether to give preclusive effect to issues resolved in an order that has not been entered as final:

> (1) whether the prior decision was adequately deliberated and firm and not avowedly tentative;
>
> (2) whether the parties were fully heard;
>
> (3) whether the court supported its decision with a reasoned opinion; and
>
> (4) whether the court's prior decision was subject to appeal or was in fact reviewed on appeal.

*Id.* at 1276.

*Baltrusch*, 130 P.3d at 1275-76.  The Court will, therefore, look to the *Baltrusch* factors to determine whether the findings and conclusions in Judge Harris' October 1, 2018 Order are sufficiently final to be given preclusive effect.

      1.    <u>Adequately Deliberated and Firm and Not Avowedly Tentative</u>

In light of the statutory framework under which the October 1, 2018 Order was litigated, the best understanding of Judge Harris' Order is that it was a preliminary injunction.  The original stay was issued without notice to the State pursuant to Mont. Code Ann. § 27-19-315, which allows temporary restraining orders without notice to the adverse party in certain situations.  (Doc. 75-2.)

8

Judge Harris held a hearing on the matter 5 days later, which he characterized as a "hearing on the temporary restraining order." (*Id.* at 2.) This complied with Mont. Code Ann. § 27-19-318 (2017), which provided that "[w]henever a temporary restraining order is granted without notice, the application for an injunction must be set for hearing at the earliest possible time and takes precedence over all matters except older matters of the same character At the hearing the party who obtained the temporary restraining order shall proceed with the application for an injunction . . . ."

Following the hearing, Judge Harris issued the October 1, 2018 Findings of Fact and Conclusions of Law and Order, staying enforcement of the State's Revocation Order until further order. (Doc. 75-5 at 11.) The procedure conformed to Mont. Code Ann. § 27-19-303, which permits the issuance of a preliminary injunction after hearing.

Hence, Judge Harris' Order was issued in accordance with the requirements and procedures for consideration of an application for a temporary restraining order and preliminary injunction. The Order issued after the hearing was tantamount to a preliminary injunction, even if it was not expressly titled as such.

A preliminary injunction is, by definition, not a final determination on the merits of a controversy. The limited function of a preliminary injunction is "to preserve the status quo and to minimize the harm to all parties pending final

resolution on the merits." *Driscoll v. Stapleton*, 472 P.3d 386, 391 (Mont. 2020).

Thus, "a party need establish only a prima facie violation of its rights to be entitled

to a preliminary injunction – even if such evidence ultimately may not be sufficient

to prevail at trial." *Id.* at 392. *See also Weems v. State*, 440 P.3d 4, 10 (Mont.

2019) ("An applicant need only establish a prima facie case, not entitlement to

final judgment. The court does not determine the underlying merits of the case in

resolving a request for preliminary injunction"). Thus, the nature of a preliminary

injunction is inherently tentative.

Further, although Judge Harris stated some of his findings in fairly definitive

terms, the Order acknowledged that issues remained to be determined. For

example, the Order stated that "[b]efore issuing a final judgment, the Court

requires additional information from the parties." (Doc. 75-5 at 10.) Judge Harris

also stated the stay of enforcement of the Revocation Order would remain in effect

"[u]ntil further Order of this Court," indicating his Order was not the final word on

the issues before the court. (*Id.* at 11). The Court, therefore, finds the October 1,

2018 Order lacks sufficient definiteness to be considered "firm and not avowedly

tentative." *Baltrusch*, 130 P.3d at 1276.

### 2.    Whether the Parties Were Fully Heard

On September 19, 2018, Judge Harris held a lengthy hearing. The parties

appeared with counsel, multiple witnesses testified, the parties presented oral

argument, and were invited to file supplemental briefing.  (Doc. 75-4.)  Yet, it

appears there was some uncertainty regarding the purpose and procedural posture

of the hearing.  Before the first witness was called to testify, Plaintiff's counsel

sought clarification, asking "we're just addressing the procedural aspect at this

time; correct?"  (*Id.* at 24.)  The court responded:

> Well, here's the issue.  I issued a temporary restraining order at your
> request. . . . And the issue is where do we go from here?  One
> possibility is a preliminary injunction.  But for a preliminary
> injunction, I've got to have evidence.  The other possibility is to
> reverse on procedural grounds.  But I'm not entirely comfortable
> doing that at the present time. . . . So I'm going to basically cover both
> bases here in this hearing, and I want to hear evidence.

(*Id.* at 24.)

Therefore, although the parties fully participated in the hearing, it is not

apparent that there was clear understanding of the issues to be determined, and

whether it was intended to be a full hearing on the merits.

### 3.    Decision Supported with a Reasoned Opinion

Judge Harris' decision was supported by a thoughtful, reasoned opinion.

The October 1, 2018 Order was 11 pages long, and contained 12 findings of fact,

and 12 conclusions of law.

### 4.    Whether Prior Decision was Appealed or Subject to Appeal

In general, preliminary injunctions are subject to appeal under Montana law.

Mont. R. App. P. 6(3)(e).  Here, however, the October 1, 2018 Order was not

11

appealed, and it is not clear that the Order was, in fact, appealable in the circumstances of this case.

Under Montana law, "[a] party aggrieved may appeal in the cases prescribed in the Rules of Appellate Procedure." Mont. Code Ann. § 25-12-102. Montana Rule of Appellate Procedure 6 provides, in pertinent part:

> **(3) Orders appealable in civil cases.** In civil cases, an aggrieved party may appeal from the following, *provided that the order is the court's final decision on the referenced matter*:
>
> . . .
>
> (e) From an order granting or dissolving, or refusing to grant or dissolve, an injunction or an attachment.

Mont. R. App. P. 6(3) (emphasis added).

Based on the concluding language in the October 1, 2018 Order, it is evident that the Order was not Judge Harris' "final decision on the referenced matter." Mont. R. App. P. 6(3). Rather, Judge Harris required the parties to provide additional information and continued the stay of enforcement of the Revocation Order pending further order of the court. (Doc. 75-5 at 10-11.) Thus, even if the State had wished to appeal Judge Harris' ruling, it does not appear that the October 1, 2018 Order was the final decision on the matter, from which an appeal could lie under Rule 6(3).

On balance, the Court finds the *Baltrusch* factors do not support treating the October 1, 2018 Order as sufficiently final to for purposes of collateral estoppel.

12

### C.    Full and Fair Opportunity to Litigate Issues

Plaintiff contends the State was afforded a full and fair opportunity to litigate the issues in the prior action.  Plaintiff points out that the State was represented by counsel, submitted written briefs, and participated in a hearing where the State called witnesses.  The State counters that it did not have the benefit of a full opportunity to litigate the merits of the matter before the State court.

The application of collateral estoppel requires that the party against whom preclusion is sought had "a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971).  But "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation," redetermination of issues is warranted.  *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979).

Procedurally, the State was given a fair opportunity to litigate the issue of the preliminary injunction before Judge Harris.  The State appeared at the hearing with counsel, had the ability to call and cross-examine witnesses, was permitted to file written briefs, and received a written order following the hearing.  But substantively, it is not clear that the State had a full and fair opportunity to litigate the merits.  As the State points out, neither party was afforded an opportunity for discovery, or notice that the hearing would lead directly to a ruling on the merits.

13

Even Judge Harris equivocated when Plaintiff's counsel sought clarification about scope of issues to be decided at the hearing.  (Doc. 78-6 at 24.)  As previously noted, Judge Harris also characterized the hearing as a "hearing on the temporary restraining order" in his October 1, 2018 Order.  (Doc. 75-5 at 2.)  Thus, it does not appear that the hearing was intended as a full hearing on the merits.  Accordingly, it is questionable whether the State had a full and fair opportunity to litigate the merits of the controversy between the parties.

In sum, only two of the four elements for collateral estoppel have been satisfied in this case.  The Court, therefore, recommends that Plaintiff's Motion for Collateral Estoppel be denied.

## III.   SUMMARY JUDGMENT

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  When making this determination, the Court must

14

view all inferences drawn from the underlying facts in the light most favorable to the non-moving party.  *See Matsushita*, 475 U.S. at 587

**A.    Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment with respect to liability only on his claims for negligent misrepresentation (Count II) and Due Process *Dorwart* claims (Count VI).

1.    Count II – Negligence/Negligent Misrepresentation

Plaintiff seeks summary judgment on his allegation that the State engaged in negligent misrepresentation "by representing to MOMS that they had until September 18, 2018, to cure any alleged statutory or administrative violations found at MOMS' dispensary or cultivation site."  (Doc. 3 at ¶ 80.)  To establish a claim for negligent misrepresentation, Plaintiff must establish:

a) the defendant made a representation as to a past or existing material fact;

b) the representation must have been untrue;

c) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

d) the representation must have been made with the intent to induce the plaintiff to rely on it;

e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;

f) the plaintiff, as a result of its reliance, must sustain damage.

*Jackson v. State*, 956 P.2d 35, 43 (Mont. 1998).  The Court finds there are disputed issues of material fact with regard to this claim.

As to the first element, the parties offer differing interpretations of the statement in the Inspection Report: "Please provide proof by no later than 9.18.18 that all violations have been rectified."  (Doc. 78-4 at 8.)  Plaintiff contends this statement was a representation as to past or existing fact.  Specifically, that Plaintiff was being given the present opportunity to remedy any violations in the Inspection Report by September 18, 2018.  Or, alternatively, that Plaintiff was not presently at risk of losing his license.  The State, on the other hand, contends the statement was not a representation of fact, but was rather a request or directive to Plaintiff to provide proof that the violations were remedied.  The State argues the statement did not directly say the State would not revoke Plaintiff's license prior to September 18.

Both constructions of the statement are plausible.  Weighing the parties' competing interpretations of the evidence is a task for the jury.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]").  Thus, whether the statement

16

in the Inspection Report was a representation of a past or existing fact is a question for the jury.

Additionally, with regard to materiality, Plaintiff contends the statement in the Inspection Report was material because it ostensibly gave him an opportunity to take corrective action before being at risk of losing his provider license. The State challenges Plaintiff's materiality argument on grounds that Plaintiff did not believe he possessed a provider license at the time he received the Inspection Report. The State cites Plaintiff's email to DPHHS on July 19, 2018, approximately a week before the Inspection Report was issued, in which he indicated that he was relinquishing his provider license effective July 25, 2018. (Doc. 82-31.) Then on August 13, 2018, after he received the Revocation Order, Plaintiff stated in an email to Wiebe that he was surprised by the revocation because he had sent the Department "formal notification" that he was relinquishing his license, effective July 25, 2018. (*Id.*) Plaintiff also advised DPHHS that "I don't consider myself a licensed Provider at this time or since the end of last month." (*Id.*)

In response, Plaintiff argues that regardless of his statements in the emails, the State did not accept his relinquishment, as evidenced by the fact that the State took action to issue the Inspection Report and Revocation Order. Plaintiff

contends that the State's actions would have been unnecessary if he did not, in fact, have a provider license.

Again, both parties' interpretations of the events and communications surrounding the revocation of Plaintiff's license are plausible. In light of the conflicting inferences about the status of Plaintiff's license, the Court finds there are disputed issues of material fact with regard to the materiality of the statement in the Inspection Report.

Additionally, regarding the fifth element, there is a material dispute of fact regarding reliance. Plaintiff asserts he acted in reliance on the statement in the Inspection Report by continuing to operate the dispensary and cultivation facility. Plaintiff indicates that he also continued in his efforts to merge with Lionheart Caregiving. The State counters that continued operation, without any change to the status quo, is not reliance, and there are no facts to indicate Plaintiff changed his position or did anything differently based on the alleged representation. The Court finds that whether Plaintiff justifiably relied on the statement in the Inspection Report presents a jury question.

Finally, as to the sixth element, Plaintiff asserts he sustained damage by relying on the State's representation that the business would not be shut down until September, when in fact, his license was revoked on August 13, 2018. Plaintiff argues he lost his license because he was not given the time to remedy the

violations or to merge with Lionheart.  But as noted above with regard to materiality, the State has pointed to evidence suggesting Plaintiff did not believe he had a provider license at the time.  Thus, because there are disputed issues of fact as to the status of Plaintiff's license, the Court finds there are likewise disputed issues regarding damages.

Therefore, because the Court finds there are disputed issues of fact regarding Plaintiff's Negligent Misrepresentation claim, the Court recommends that Plaintiff's Motion for Partial Summary Judgment on Count II be denied.

### 2.    Count VI – Due Process *Dorwart* Claims

Plaintiff alleges the State violated his state constitutional rights by revoking his provider license without adequate procedural due process.  Under Montana law, a cause of action for money damages is available for a violation of Article II, Section 17 of the Montana Constitution.  *Dorwart v. Caraway*, 58 P.3d 128, 137 (Mont. 2002).  Article II, Section 17 provides that "no person shall be deprived of life, liberty, or property without due process of law."  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Small v. McRae*, 651 P.2d 982, 987 (Mont. 1982) quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Procedural due process "generally requires notice of a proposed action which could result in depriving a person of a property interest and the opportunity

to be heard regarding that action." *Pickens v. Shelton-Thompson*, 3 P.3d 603, 606 (Mont. 2000). To succeed on a claim for violation of procedural due process, it must be shown that (1) a property interest exists; and (2) the procedures in place provided an inadequate protection of that property interest. *Mont. Media, Inc. v. Flathead Cty.*, 63 P.3d 1129, 1141 (Mont. 2003).

### a.   *Property Interest*

Plaintiff asserts he had a property interest in his provider license. The State counters that Plaintiff had no property interest in the license because at the time of revocation, he did not believe he possessed a license. Additionally, the State argues that a marijuana provider license is a privilege and not a right.

Mont. Code Ann. § 50-46-312(1) articulates the unremarkable principle that there is no right to obtain a marijuana provider license in Montana. Specifically, it states a provider license "is a privilege that the state may grant to an applicant and is not a right to which an applicant is entitled." Mont. Code Ann. § 50-46-312(1) (2017). Generally speaking, a license "is a grant by a government authority or agency of the right to engage in conduct that would be improper without such a grant. The conferment of a license . . . is merely a privilege. . . ." *Wallace v. Montana Dep't of Fish, Wildlife & Parks*, 889 P.2d 817, 820 (Mont. 1995).

But once issued, a license generally confers on the recipient a property interest that is entitled to due process protections under Montana's Constitution.

20

*See e.g. Kafka v. Montana Dep't of Fish, Wildlife & Parks*, 201 P.3d 8, 19-20

(Mont. 2008) (noting that "licenses may contain property interests that go beyond

their status as a "mere privilege.").  *State v. Pyette*, 159 P.3d 232, 235 (Mont.

2007) (driver's license becomes a property interest once issued); *Crismore v. Mont.

Bd. of Outfitters*, 111 P.3d 681 (Mont. 2005) (recognizing protected property

interest in outfitter license); *Barry v. Barchi*, 443 U.S. 55 (1979) (recognizing

property interest in horse trainer license).

     The Montana Supreme Court's discussion of property interests in *Wilson v.

Dept of Pub. Serv. Reg.*, 858 P.2d 368 (Mont. 1993) is instructive on this issue.

The plaintiffs in *Wilson* operated a waste disposal business and held a Class D

Motor Carrier Certificate of Public Convenience and Necessity, which authorized

them to transport garbage and other materials.  *Id.* at 369.  The Public Service

Commission (PSC), which issued the Certificate, initiated an action against the

plaintiffs to revoke their Certificate.  The Montana Supreme Court noted that "[t]he

right to carry on a lawful business is a property right[.]"  *Id.* at 371.  The court

explained that "[i]nasmuch as the [plaintiffs] may not carry on their business

except under the authority of a certificate of public convenience and necessity

issued by the PSC, it follows that if that agency intends to take action which might

result in the [plaintiffs'] loss of their certificate, and hence their right to do

business," the plaintiffs would be entitled to procedural due process.  *Id.*

Likewise, a marijuana provider license permits the holder to lawfully conduct business under Montana law.  Thus, the State's grant of a provider license confers upon the licensee the right to carry on a lawful business.  As in *Wilson*, if DPHHS intends to take action that may result in the loss of a marijuana provider's license and right to do business, the licensee has a property interest in their license that is entitled to due process protection.

As noted above, however, there are factual disputes in this case whether Plaintiff had, or believed he had, a valid provider license at the time of the revocation.  The Court, therefore, cannot find as a matter of law that Plaintiff, in fact, had a property interest.

b.    *Process*

Plaintiff also contends the post-deprivation due process he received was inadequate.  Plaintiff asserts he should have received pre-deprivation process, and the State lacked adequate justification to provide only post-deprivation process.  The State counters that even assuming Plaintiff had a property interest in his provider license, he committed numerous violations that allowed the State to immediately revoke the license without a pre-deprivation hearing.

"The process due in any given case varies according to the factual circumstances of the case, the nature of the interests at stake and the risk of making an erroneous decision."  *Pyette*, 159 P.3d at 235.  Process can either be in the form

22

of pre-deprivation process or post-deprivation process.  Generally, in situations where the State can feasibly provide a pre-deprivation hearing before taking property, it must do so.  *Zinerman v. Burch*, 494 U.S. 113, 132 (1990).  "Only under exigent circumstances, where the government's interest requires immediate action, may a post-deprivation rather than a pre-deprivation hearing satisfy due process."  *Mont. Media, Inc.*, 63 P.3d at 1141.  *See also Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988) ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.").

At the time Plaintiff's provider license was revoked, DPHHS was governed by the Montana Marijuana Act, Mont. Code Ann. § 50-46-301, et seq., the Montana Administrative Procedure Act ("MAPA"), § 2-4-101, et seq., and the Administrative Rules of Montana ("ARM") 37.107.101, et seq.  Under Administrative Rule 37.107.130(1), DPHHS was required to provide written notice to a licensee before their license could be revoked.  ARM 37.107.130(1) also specified several potential grounds for the revocation of a license.

The Montana Administrative Procedure Act provides that when the revocation of a license is required by law to be preceded by notice and opportunity for hearing, the MAPA contested case provisions apply.  Mont. Code Ann. § 2-4-

23

631(1).  The contested case provisions require that "all parties must be afforded an

opportunity for hearing after reasonable notice," that includes (1)  notice of the

time, place and nature of the hearing; (2) a statement of the legal authority and

jurisdiction under which hearing is to be held; (3) reference to the particular

statutes and rules involved; (4) a short and plain statement of the matters asserted;

and (5) a statement that formal proceeding may be waived.  *See* Mont. Code Ann.

§ 2-4-601.  Only where "the agency finds that public health, safety, or welfare

imperatively requires emergency action and incorporates a finding to that effect in

its order," is the summary suspension of a license allowed.  Mont. Code Ann. § 2-

4-631(3).

Here, it is undisputed that Plaintiff was not provided pre-deprivation

process.  The State argues, however, that it had authority to summarily revoke

Plaintiff's license.  The State argues that it complied with ARM 37.107.130(1) by

providing written notice of the revocation via the Inspection Report on August 7,

2018 and the Revocation Order on August 13, 2018.  The State further contends

Plaintiff committed numerous violations of the Montana Medical Marijuana Act

that warranted immediate action, including violation of § 50-46-330 (allowing

others to be in possession of marijuana plants, seedlings, usable marijuana and

infused products); § 50-46-312(1) (making false statements or misrepresentations

in his license application); § 50-46-308(1)(a)(vi) (manufacturing infused products

24

and dispensing marijuana from a non-registered premises); § 50-46-308(6)(b) (cultivation location impermissibly shared with another provider); and § 50-46-312(4)(b) (dispensary location ineligible for license because prohibited by city ordinance).

Plaintiff counters that if the State believed the alleged violations justified immediate revocation, and only post-deprivation notice, then the State would not have given Plaintiff the opportunity to remedy the violations in the Inspection Report and allowed the continued operation of the business for almost two months.

Thus, the parties dispute whether exigent circumstances existed at the time of the revocation, and there are facts in the record to support their respective positions. Accordingly, the Court cannot find as a matter of law that post-deprivation process was insufficient in the circumstances of this case. Whether exigent circumstances existed is a question for the jury.

Accordingly, the Court recommends that Plaintiff's Motion for Partial Summary Judgment on Count VI (Due Process *Dorwart* claims) be denied.

## B.    The State's Motion for Summary Judgment

The State moves for summary judgment on all of Plaintiff's state law claims. Plaintiff concedes his claims for defamation (Count V), *Dorwart* claims based on the right to privacy and employment (Count VI), and conspiracy (Count VII). It is

thus recommended that the State's motion for summary judgment as to those claims be granted.

Therefore, the only claims remaining at issue in the State's motion are Plaintiff's claims for negligence/negligent misrepresentation (Count II), tortious interference (Counts III-IV), and Due Process *Dorwart* claims (Count VI).

      1.  <u>Damages</u>

At the outset, the State argues Plaintiff's claims fail as a matter law because he cannot demonstrate an entitlement to damages. The State argues Plaintiff is only entitled to claim damages incurred by "Steven Palmer d/b/a Montana Organic Medical Supply," and not on behalf of his brother Shawn Palmer or A&S Palmer Enterprises, Inc., a corporation owned jointly by Shawn and Steve Palmer. The State acknowledges, however, that Steven Palmer reported individual income to the IRS from marijuana infused cookies he produced in the amount of $3,353 to $16,040 between 2014 and 2018. Thus, there is a basis from which Plaintiff can claim damages.

The State further argues that even if Plaintiff were entitled to recover all damages alleged from the loss of revenue from the dispensary, no damages were actually incurred because the business had no value. In response, Plaintiff points to the opinion of his expert that cannabis businesses may sell for millions, even if they do not produce a profit, and that Plaintiff's license alone had a value

approximately of $250,000.  (Doc. 91 at 39-40, ¶¶ 9-12.)  As such, there are material disputes of fact as to damages.

Additionally, the State argues that even assuming the revocation of Plaintiff's provider license did not comport with due process, the revocation was justified because Plaintiff was operating illegally, and therefore Plaintiff is entitled to no more than nominal damages.  But the denial of procedural due process is actionable for nominal damages, even if substantive injury cannot be proven. *Weinberg v. Whatcom Cty.*, 241 F.3d 746, 752 (9th Cir. 2001) (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).

Ultimately, the question of whether, or in what amount, Plaintiff can establish damages is a question of fact for a jury.  *Dahlin v. Rice Truck Lines*, 352 P.2d 801, 804 (Mont. 1960) ("The rule has been established in this state that the amount of damages is committed first to the discretion of the jury, and next to the discretion of the trial judge, who, in passing upon the motion for new trial, may set it aside if it is not just.").

### 2.   Count II - Negligent Misrepresentation/Negligence

Plaintiff alleges two bases for his claim of negligent misrepresentation. First, Plaintiff asserts DPHHS negligently misrepresented that Plaintiff would have until September 18, 2018 to cure any alleged statutory or administrative violations found at Plaintiff's dispensary or cultivation site.  (Doc. 3 at ¶ 80.)  The Court has

determined that there are disputed issues of material fact with regard to this aspect of Plaintiff's negligent misrepresentation claim.  Summary judgment is, therefore, not appropriate.

Second, Plaintiff alleges the State engaged in negligent misrepresentation when DPHHS emailed the Billings Police Department, and gave them false information that the District Court had approved the license revocation and that Plaintiff was illegally selling marijuana and marijuana infused products.  The State argues this aspect of the claim fails because the representations were admittedly true.  Plaintiff does not present any argument in opposition to this portion of the State's motion.

Negligent misrepresentation requires proof that the defendant made a representation as to a past or existing material fact that was untrue.  *Jackson*, 956 P.2d at 43.  Here, the representations were made to the Billings Police Department on March 12, 2019.  (Doc. 91 at ¶ 106.)  Plaintiff does not dispute that he admitted in his deposition that the representations were true, and that he did not have a valid license to sell marijuana in March 2019.  (*Id.* at ¶ 102.)  Accordingly, the State is entitled to summary judgment on this aspect of Plaintiff's negligent misrepresentation claim.

The Court will therefore recommend that the State's Motion for Summary Judgment on Count II be granted in part, and denied in part.

3.    <u>Counts III-IV – Tortious Interference</u>

Plaintiff alleges the State's revocation of his license tortiously interfered with his business relations in two ways.  First, Plaintiff asserts the State interfered with his relationship with cardholders who purchased marijuana from his dispensary by advising the cardholders Plaintiff's provider license was being revoked.  Second, Plaintiff alleges the revocation interfered with the prospective merger with Lionheart.  The State argues both claims fail because the alleged interference was justified, and did not result in actual damage or loss.

"An action for tortious interference with business relations entails four elements: that the defendant's acts: (1) are intentional and willful; (2) calculated to cause damage to the plaintiff's business; (3) done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) result in actual damages and loss."  *State Med. Oxygen & Supply, Inc. v. Am. Med. Oxygen Co.*, 883 P.2d 1241, 1243 (1994).

The State contends its alleged interference with the cardholders was justified because Plaintiff was in violation of multiple regulations that were intended to protect the safety of consumers.  In response, Plaintiff argues the State cited him for violating at least one law that was no longer in effect.  (Doc. 91 at ¶ 84.)  Further, Plaintiff contends the remaining violations did not create exigent circumstances warranting immediate revocation and notice to the cardholders

because the Inspection Report gave him until September 18, 2018 to remedy the violations.  Both parties' positions are supported by evidence in the record. Accordingly, the Court finds there are disputed issues of material fact regarding whether the State acted without right or justifiable cause.

The State further contends the alleged interference in the prospective merger with Lionheart did not result in actual damage or loss because Plaintiff had already relinquished his license in preparation for the merger.  But, as the Court has already noted, there are disputed issues of fact with regard to the relinquishment of Plaintiff's license.  As a result, there are likewise disputed issues regarding actual damage or loss.

The Court, therefore, recommends that the State's Motion for Summary Judgment on Counts III and IV be denied.

### 4.    Count VI – Due Process *Dorwart* Claim

As noted above, Plaintiff does not oppose summary judgment as to his *Dorwart* claims based on right to privacy and employment.  The State argues Plaintiff's *Dowart* due process claim also fails because he was provided adequate post-deprivation due process.  As discussed above, the Court has determined that there are disputed issues of material fact with regard to Plaintiff's state due process claim regarding post-deprivation due process.  The State's motion for summary

judgment as to this aspect of Plaintiff's claim in Count VI should, therefore, be denied.

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Collateral Estoppel (Doc. 74) be **DENIED**;

2.    Plaintiff's Motion for Partial Summary Judgment (Doc. 79) be **DENIED**;

3.    State Defendants' Motion for Summary Judgment (Doc. 80) be **GRANTED** as to Counts V and VII, **GRANTED in part** as to Counts II and VI **and DENIED** as to all remaining claims.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 5th day of February 2024.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge