IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| STEVEN PALMER d/b/a MONTANA ORGANIC MEDICAL SUPPLY, | CV 21-38-BLG-SPW<br>Consolidated with Member Case:<br>CV 22-25-BLG-SPW |
| Plaintiff, | |
| v. | |
| MONTANA DEPARTMENT OF HEALTH AND HUMAN SERVICES; DARCI WIEBE in her individual and official capacity; JAMIN GRANTHAM, in his individual and official capacity; CITY OF BILLINGS; STEVE HALLAM in his individual capacity; and JOHN DOES 1-10, | **ORDER** |
| Defendants. | |

Before the Court is United States Magistrate Judge Timothy Cavan's Findings and Recommendations on Plaintiff Steven Palmer d/b/a Montana Organic Medical Supply's Motion for Collateral Estoppel (Doc. 74), Plaintiff's Motion for Partial Summary Judgment on Counts II and VI (Doc. 79), and Defendant Montana Department of Heath and Human Services' ("DPHHS" or "the State") Motion for Summary Judgment (Doc. 80).[1] (Doc. 99). Judge Cavan recommended the Court

---

[1] Plaintiff's Motion for Collateral Estoppel and Motion for Partial Summary Judgment on Counts II and VI were also filed in Member Case CV 22-25-BLG-SPW. The motions in the Member Case are identical to the motions in the lead case, and the Findings and Recommendations address all

1

deny Plaintiff's Motion for Collateral Estoppel and Motion for Partial Summary Judgment, and grant in part and deny in part the State's Motion for Summary Judgment. (*Id.* at 2).

Both parties filed objections and corresponding responses. (Docs. 100, 101, 104, 105).

For the following reasons the Court adopts in part and rejects in part Judge Cavan's Findings and Recommendations.

## I.    Legal Standard

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The portions of the findings and recommendations not properly objected to are reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

An objection is proper if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, No. CV 09-147-M, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not

---

pending motions in the consolidated actions. This Court's order will address all the motions, as well.

sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.*

## II.   Background

Neither party objects to Judge Cavan's recitation of the facts of the case. Thus, the Court will adopt Judge Cavan's background section in full and only reiterate the facts necessary to the analysis below.[2]

In short, this case challenges the authority of the State to revoke Plaintiff's medical marijuana provider's license and the methods by which they revoked it. DPHHS inspected Plaintiff's marijuana dispensary in Billings, Montana ("M.O.M.S.") on June 13, 2018. DPHHS finalized the inspection report on July 25, 2018, and noted various statutory and regulatory violations. (Doc. 82-33, hereinafter "Inspection Report"). Plaintiff received the Inspection Report on August 7, 2018. (Doc. 91 at 28). At the end of the Inspection Report under the Corrective Action Items section, the inspector wrote, "Please provide proof by no later than 9.18.18 that all violations have been rectified." (Doc. 82-33 at 8). On August 13, 2018, Plaintiff was served with an order revoking his provider license for the violations noted in the Inspection Report. (Doc. 78-8, hereinafter "Revocation Order").

---

[2] The Court also notes that it provided a thorough recitation of the facts in its order adopting Judge Cavan's Findings and Recommendations on the parties' motions to dismiss. (Doc. 39).

Pursuant to the governing Administrative Rule, ARM 37.107.130, Plaintiff filed a petition for judicial review in the Thirteenth Judicial District Court in Yellowstone County, Montana on September 12, 2018. (Doc. 82-34). He also sought a temporary restraining order, which the district court granted on September 14, 2018. (*Id.* at 10). After a hearing, the district court found the Revocation Order was unlawful because it violated Montana's constitutional due process protections and the Montana Administration Procedure Act, Montana Code Annotated § 2-4-631(3). (*Id.* at 4–5). However, because Plaintiff's damages were unclear, the district court requested more information from the parties before issuing a final order. (*Id.* at 3). Before the district court issued any final order, the parties agreed to dismiss the case. (Doc. 78-12).

Plaintiff filed this suit on April 6, 2021, against the State, Darci Wiebe (the Bureau Chief of the Montana Medical Marijuana Program with DPHHS) in her individual and official capacity, Jamin Grantham (an inspector for DPHHS' Medical Marijuana Program) in his individual and official capacity, the City of Billings, and Billings Police Department Detective Steve Hallam. (Doc. 1). Plaintiff asserted a 42 U.S.C. § 1983 claim against DPHHS, Wiebe, and Grantham (collectively, "State Defendants"); a § 1983 claim against the City of Billings and Detective Hallam; a negligence/negligent misrepresentation claim against the State Defendants; two tortious interference claims against DPHHS; a defamation claim against the State

Defendants; a *Dorwart* constitutional claim against DPHHS; a *Dorwart* constitutional claim against the City of Billings; a conspiracy claim against the State Defendants; a trespass claim against Detective Hallam; a conversion claim against Detective Hallam; a claim for punitive damages against Wiebe and Grantham; and a claim for punitive damages against Detective Hallam. (*Id.*).

After Plaintiff amended his Complaint (Doc. 3), the State Defendants collectively moved to dismiss the § 1983 and punitive damages claims against them. (Doc. 39 at 7). The City of Billings and Detective Hallam also moved to dismiss Plaintiff's § 1983 claim against them. (*Id.*). Judge Cavan issued Findings and Recommendations on December 14, 2021, recommending the Court grant the State's and the City of Billing's motions. (*Id.* at 13). He further recommended the Court deny Detective Hallam's motion. (*Id.*). On February 15, 2022, the Court adopted his Findings and Recommendations in full. (*Id.*).

On August 31, 2023, Plaintiff moved to dismiss all claims against Detective Hallam and the City of Billings. (Doc. 85). The Court granted the motion. (Doc. 86).

On July 26, 2023, Plaintiff moved for collateral estopped and for partial summary judgment on his *Dorwart* and negligent misrepresentation claims against the State Defendants. (Docs. 74, 79). The same day, the State moved for summary judgment on Plaintiff's remaining claims. (Doc. 80).

Judge Cavan recommended denying Plaintiff's motions; granting the State's motion as to Plaintiff's defamation claim, conspiracy claim, negligent misrepresentation claim concerning an email DPHHS sent to the Billings Police Department, and his *Dorwart* claims concerning his right to privacy and employment; and denying the State's motion as to all remaining claims. (Doc. 99).

## III.   Collateral Estoppel

Judge Cavan recommended the Court deny Plaintiff's Motion for Collateral Estoppel on the grounds that the order dismissing the matter without prejudice after the parties agreed to dismiss the case was not a final judgment on the merits, and that it was not clear whether the parties had a full and fair opportunity to the litigate the issues. (Doc. 99 at 7–14). Neither party objects to Judge Cavan's Findings and Recommendations on the motion. Reviewing for clear error, the Court finds none and adopts in full Judge Cavan's Findings and Recommendations on the motion.

## IV.   Summary Judgment Motions

### A.   *Legal Standard*

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477

U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 587.

  *B.*  *Objections*

  Plaintiff lodges the following objections to Judge Cavan's Findings and Recommendations on Plaintiff's *Dorwart* claim as to the allegedly insufficient due process afforded by DPHHS:

  (1) Judge Cavan erred in concluding that material disputes exist as to whether Plaintiff "had, or believed that he had, a valid provider license at the time of the revocation." (Doc. 101 at 4 (quoting Doc. 99 at 22)); and

  (2) Judge Cavan erred in concluding that material disputed facts existed as to whether pre-deprivation process was required. (*Id.*).

  The State lodges the following objections to Judge Cavan's Findings and Recommendations on its Motion for Summary Judgment:

  (1) Judge Cavan erred in denying summary judgment on the amount and type of damages that Plaintiff can legally claim and recover because he did not address whether Plaintiff can recover for damages to A&S Palmer Enterprises,

Inc., which is a separate and distinct corporate entity that is not a party to this litigation;

(2) Judge Cavan erred in denying summary judgment on Plaintiff's negligent misrepresentation claim as to the statement in the Inspection Report about the violations because the statement was not a representation about a past or existing fact, and Plaintiff did not rely to his detriment on the statement;

(3) Judge Cavan erred in denying summary judgment on the tortious interference claim because the State's interference was justified and did not cause Plaintiff's damages;

(4) Judge Cavan erred in denying summary judgment on Plaintiff's *Dorwart* claim because Plaintiff did not have a property interest and received adequate post-deprivation process; and

(5) Judge Cavan erred by not addressing the State's motion on Plaintiff's negligence claim.

(Doc. 100 at 2).

The State's objections on tortious interference are improper because they merely restate the same arguments made in front of Judge Cavan. The Court will review Judge Cavan's findings on the tortious interference claim for clear error. The rest of the parties' objections are proper, and the Court will review Judge Cavan's rulings on the issues they raise de novo. Additionally, the Court will address the

parties' objections on the *Dorwart* claims together, since their arguments address the same disputed elements.

C.    Dorwart *Claims*

Both parties object to Judge Cavan's denial of the motions as to Plaintiff's *Dorwart* claim concerning Plaintiff's due process rights.

Article II, § 17 of the Montana Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." A cause of action for money damages is available for a violation of Article II, § 17. *Dorwart v. Caraway*, 58 P.3d 128, 137 (Mont. 2002).

Procedural due process "generally requires notice of a proposed action which could result in depriving a person of a property interest and the opportunity to be heard regarding that action." *Pickens v. Shelton-Thompson*, 3 P.3d 603, 606 (Mont. 2000) (internal citation and quotation marks omitted). To succeed on a claim for violation of procedural due process, it must be shown: (1) a property interest exists; and (2) the procedures in place provided an inadequate protection of that property interest. *Mont. Media, Inc. v. Flathead County*, 63 P.3d 1129, 1141 (Mont. 2003).

In front of Judge Cavan, the parties disagreed on whether Plaintiff satisfied both elements. Plaintiff asserts he had a property interest in his provider license, and that the post-deprivation due process he received was inadequate. (Doc. 99 at 20, 22). Specifically with respect to the necessary process, Plaintiff maintained that the

State could not prove exigent circumstances existed to justify immediate revocation without pre-deprivation process. (*Id.* at 25). If exigent circumstances existed, the State would not have initially given Plaintiff the opportunity to remedy the violations in the Inspection Report and allowed the continued operation of the business for almost two months. (*Id.*).

In response, the State argued Plaintiff did not have a property interest because, at the time of the revocation, he did not believe he possessed a license. (Doc. 88 at 11). The State also maintained that a marijuana provider license is a privilege and not a right. (*Id.*; *see also* Doc. 81 at 18). As to the process afforded if Plaintiff is found to have a property interest, the State countered that Plaintiff's numerous violations of law permitted the State to immediately revoke the license without a pre-deprivation hearing. (Doc. 88 at 12).

Judge Cavan found disputed facts existed as to both elements. As an initial matter, Judge Cavan found that once the State grants a provider license, the licensee has a property interest in the license that is entitled to due process. (Doc. 99 at 21–22 (citing *Wilson v. Dep't of Pub. Serv. Reg.*, 858 P.2d 368 (Mont. 1993))). Judge Cavan next found that factual disputes existed as to whether Plaintiff had or believed he had a valid provider license at the time of the revocation. (*Id.* at 22).

As to the process afforded, Judge Cavan first found that because the Administrative Rules governing revocation of marijuana licenses at the time

required pre-deprivation notice, the provisions of the Montana Administrative Procedure Act ("MAPA") governed. (*Id.* at 23). MAPA, § 2-4-631 requires a finding of exigent circumstances for the State to not afford a licensee a pre-deprivation hearing. (*See id.* at 23). Judge Cavan found disputed facts existed as to whether exigent circumstances existed, so he recommended the Court deny summary judgment. (*Id.* at 25).

The State's objections to Judge Cavan's findings on the property interest question mirror its arguments in front of Judge Cavan: Plaintiff cannot have a property interest in a marijuana license because a marijuana license is a privilege, not a right; and even if a protected property interest, the record demonstrates that Plaintiff had voluntarily relinquished, and therefore did not have, a license. (Doc. 100 at 10–11). As to the process afforded, the State maintains that the MAPA provisions do not apply because the application Administrative Rules only required pre-deprivation notice, which was given, not an opportunity for a pre-deprivation hearing. (*Id.* at 12). Even if the MAPA provisions applied, the State maintains that Plaintiff's illegal actions—which it lists in response to Plaintiff's objection— "created a serious threat to public health and safety that justified, and even necessitated, the State's actions." (Doc. 104 at 6).

Plaintiff also objected to Judge Cavan's findings on both elements. Plaintiff recited 13 facts he asserts demonstrate that Plaintiff undisputedly had a provider

license at the time of revocation. (Doc. 101 at 5–6). The facts generally indicate that Plaintiff tried to relinquish his license in an email to DPHHS, DPHHS did not respond and therefore did not accept his relinquishment, and that DPHHS subsequently served on Plaintiff the Inspection Report and Revocation Order. (*Id.*). Collectively, Plaintiff argues these facts demonstrate that despite trying to relinquish his license, he retained it. (*Id.* at 6).

As to the post-deprivation process, Plaintiff argues DPHHS's initial grant of time for Plaintiff to remedy the violations, its failure to immediately revoke the license following the inspection, and the lack of any findings of exigent circumstances in the Inspection Report demonstrate the absence of exigent circumstances. (*Id.* at 8–10). Last, Plaintiff contends that Judge Cavan erred in not addressing Plaintiff's arguments that, even if pre-deprivation process was not necessary, Plaintiff's post-deprivation process was insufficient. (*Id.* at 10–11).

First, the Court agrees with Judge Cavan that once the State grants a provider license, a licensee has a protected property interest in that license and that the State must comply with due process if it seeks to revoke that right. *See Wilson*, 858 P.2d 368. Judge Cavan's reading of *Wilson* correctly reflects the Montana Supreme Court's holding that once the state grants a business permission to operate via a certificate, or in Plaintiff's case a license, "it follows that if that agency intends to take action which might result in the loss of" the certificate or license, "and hence

12

their right to do business, fundamental fairness and due process require that they at a minimum be given notice of the alleged bases for the possible revocation." *Id.* at 371.

Second, the Court agrees with Judge Cavan that disputed facts exist as to whether Plaintiff had a valid provider's license, and therefore property interest, at the time it was revoked. On the one hand, as Plaintiff recounts, the State operated as if Plaintiff had an existing license. Plainly, how could the State revoke a license that Plaintiff no longer held? On the other hand, ambiguities exist as to whether the State accepted Plaintiff's voluntarily relinquishment. In fact, it is not clear if the State needed to accept Plaintiff's relinquishment for it to be valid, or if Plaintiff could unilaterally do so, because neither party cited, nor could the Court find, DPHHS's procedure for relinquishment. Accordingly, Judge Cavan properly concluded that disputed facts exist as to whether Plaintiff held a valid license, and therefore a property interest, at the time of revocation.

Third, the Court disagrees with Judge Cavan's conclusion that the MAPA provisions applied. MAPA, § 2-4-631, applies when the revocation of a license "is required by law to be preceded by notice *and opportunity for hearing*[.]" Mont. Code Ann. § 2-4-631 (emphasis added). At the time of the revocation, Montana Administrative Rule 36.107.130 (2017) governed revocations of medical marijuana provider licenses. It allowed the department to deny or revoke an application for 13

13

reasons "after written notice to … the licensee." Mont. Admin. R. 37.107.130. The rule does not require the opportunity for a hearing before the revocation, and so the MAPA provision does not apply.

The question remains whether constitutional due process required pre-deprivation process, specifically a contested case hearing. Procedural due process "requires that some form of hearing be available that provides a meaningful and timely opportunity to be heard before property is taken." *Mont. Media, Inc.*, 63 P.3d at 1141. Though procedural due process "does not prescribe what procedural safeguards must be in place … the procedure should reflect the nature of the private and governmental interests involved." *Id.* "Only under exigent circumstances, where the government's interest requires immediate action, may a post-deprivation rather than pre-deprivation hearing satisfy due process." *Id.*

Thus, the Court's analysis of whether constitutional due process permitted the State to revoke Plaintiff's license without pre-deprivation notice and a hearing depends on whether exigent circumstances existed for the revocation. Judge Cavan assessed whether exigent circumstances existed, so even though his discussion was in the context of MAPA, his analysis is transferrable to a constitutional due process context. Thus, the Court will review his conclusions on whether exigent circumstances permitted the State to revoke Plaintiff's permit without pre-deprivation due process under a de novo standard of review.

The Court agrees with Judge Cavan that whether exigent circumstances existed is disputed. Like Plaintiff, the Court finds the State's actions are reasonably interpreted as contradicting its claim that revocation was necessary to safeguard public safety, health, and welfare. For instance, despite the inspector sending a memorandum to DPHHS three days after the inspection requesting permission to immediately revoke Plaintiff's license, DPPHS did not act on the request. (Doc. 89 at 3–4). DPHHS then issued the Inspection Report on July 25, 2018—more than a month later—and stated Plaintiff had almost two more months to remedy the violations. (Doc. 78-4). These facts could indicate DPHHS did not believe immediate revocation was warranted.

At the same time, Wiebe testified that DPHHS gave Plaintiff three months to resolve the problem initially because DPHHS generally tries to work with providers to bring them into compliance before revoking their license. (Doc. 78-1 at 51). However, Wiebe described the Palmers as not "interested in being compliant," and thus the concerns for public safety justified revocation. (*Id.*). Further, the inspector who signed the report, Kim Speckman, testified that the report took a month to finalize and sign because DPHHS had many other inspections to complete, which all took preparation, travel, collaboration with other inspectors, and a review process. (Doc. 78-2 at 32–33). With that context, she said, a month "actually is not that long[.]" (*Id.* at 33). Speckman also testified that the revocation process was

15

new to DPHHS, and there was ongoing discussion "over what might merit a revocation." (*Id.*).  Thus, a reasonable juror could find DPHHS did not delay in acting.

Regarding the State's argument that Plaintiff's illegal actions created a serious threat to public health and safety, the Court cannot grant summary judgment on this basis for two reasons.  First, four of the six alleged violations of law the State lists were not in the Inspection Report or the Revocation Notice and therefore are post-hoc rationalizations for DPHHS's conduct that the Court cannot consider in evaluating DPHHS's conduct.  *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020) (holding that an agency "must defend its actions based on the reasons it gave when it acted" and not on post hoc rationalizations).  Specifically, neither the Inspection Report nor the Revocation Notice conclude that Plaintiff "allowed employees of Lionheart Caregiving and A&S Palmer Enterprises to be in possession of his marijuana plants, seedlings, usable marijuana, and infused products"; that Plaintiff "falsely represented that Shawn did not have a financial interest in the business, when the buy/sell agreement was a sham executed solely for the purpose of the license application"; that the "business was operated under the auspices of A&S Palmer Enterprises, which was not a licensed provider and was ineligible for licensure due to Shawn Palmer's

ownership and prior drug conviction"; and that the dispensary location in Billings was ineligible for a license under a city ordinance. (Doc. 100 at 9).

The State's remaining two reasons for revocation—that Plaintiff admitted he manufactured marijuana-infused products at another's premises in violation of Montana Code Annotated § 50-46-308(6)(a) and that the warehouse leased by M.O.M.S. was shared with another provider in violation of Montana Code Annotated § 50-46-308(6)(b)—were listed as violations in the Inspection Report and Revocation Report, and thus are proper for the Court to consider. However, the Court has no basis to conclude that these actions created exigent circumstances other than the statements made by counsel. Accordingly, it cannot not rule, as a matter of law, that these violations constituted exigent circumstances justifying revocation without pre-deprivation process.

Plaintiff last argues that Judge Cavan erroneously failed to address whether the post-deprivation process provided was adequate. (Doc. 101 at 10). Specifically, Plaintiff asserts he was not given a meaningful notice or opportunity to be heard because he did not receive prior notice of DPHHS's intent to revoke, only a notice to remedy his alleged violations. (*Id.*).

The Court agrees that Judge Cavan failed to address this issue and that the State failed to provide prior written notice to Plaintiff of the revocation, as required by Administrative Rule of Montana 37.107.130 (2017). *See Mont. Media, Inc.*, 63

17

P.3d at 1140 ("Due process requires both notice of a *proposed* action and the opportunity to be heard.") (emphasis added). However, summary judgment is not proper because exigent circumstances could have justified revocation without notice, and disputed facts exist as to whether exigent circumstances existed here.

For these reasons, the Court sustains the State's objection to Judge Cavan's application of MAPA and overrules the State's other objections. The Court sustains Plaintiff's objection that Judge Cavan failed to address Plaintiff's post-deprivation argument and overrules Plaintiff's remaining objections. The Court rejects Judge Cavan's findings as to the applicability of MAPA and adopts his findings on all other issues.

D.     *Negligent Misrepresentation*

The State next objects to Judge Cavan's denial of summary judgment on Plaintiff's negligent misrepresentation claim concerning the statement in the Inspection Report.

Both parties moved for summary judgment on Plaintiff's negligent misrepresentation claim regarding the statement in the Inspection Report, "Please provide proof by no later than 9.18.18 that all violations have been rectified." Negligent misrepresentation requires Plaintiff to show:

a) the defendant made a representation as to a past or existing material fact;

b) the representation must have been untrue;

18

c) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

d) the representation must have been made with the intent to induce the plaintiff to rely on it;

e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation; and

f) the plaintiff, as a result of its reliance, must sustain damage.

*Jackson v. Montana*, 956 P.2d 35, 43 (Mont. 1998).

Judge Cavan recommended denying both parties' motions, concluding that disputed facts existed as to the first, fifth, and sixth elements.

### 1. Representation as to Past or Existing Material Fact

With respect to the first element, Judge Cavan found that a dispute existed as to whether the statement was a representation as to a past or existing fact and whether it was material. (Doc. 99 at 16). First, as to whether it was a representation about a past or existing fact, Plaintiff contended that the statement indicated that "Plaintiff was being given the present opportunity to remedy any violations in the Inspection Report by September 18, 2018[,]" or "that Plaintiff was not presently at risk of losing his license." (*Id.*). The State contended the statement was not a representation of fact but rather a request or directive for Plaintiff to provide proof that the violations were remedied. (*Id.*). Judge Cavan found both interpretations plausible and

concluded that the weighing of the parties' competing interpretations of evidence is a task for the jury. (*Id.*).

The State objects to this finding, maintaining that "no interpretation of the statement ... include[s] a representation as to future events." (Doc. 100 at 6). Specifically, the State asserts the statement "does not represent a 'present' opportunity." (*Id.*). Rather, "[i]t represents an opportunity that will continue in the future, and which will end in the future." (*Id.*). As to Plaintiff's construction of the statement to mean that he was not presently at risk of losing his license, the State argued that the Court must also read the "risk" language as necessarily implicating a future event (a revocation). (*Id.*).

Plaintiff responds that Judge Cavan correctly found both interpretations reasonable. (Doc. 105 at 7). Plaintiff further argues that the State's construction of the statement as pertaining to a future fact is "absurd and would lead to most negligent misrepresentation claims being denied." (*Id.*).

The Court agrees with Judge Cavan that whether the statement was a representation as to a past or existing material fact is ambiguous. Both parties' constructions of the statement are reasonable, and thus a jury must resolve which interpretation is correct." *See United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970) ("Summary judgment should not be granted where contradictory inferences

may be drawn from undisputed evidentiary facts."). The Court overrules the State's objection and adopts Judge Cavan's findings in full.

As to the materiality of the statement, Judge Cavan also found factual disputes precluded summary judgment. (Doc. 99 at 17). Plaintiff argued that the statement was material because it gave him an opportunity to remedy the violations before being at risk of losing his provider license. (*Id.*). The State retorted that the statement is not material because Plaintiff did not believe he had a provider license when he received the Inspection Report. (*Id.*). Plaintiff responded that regardless of Plaintiff's attempt to relinquish his license, he still retained it because the State did not accept his relinquishment. (*Id.* at 17–18). Judge Cavan held disputed facts existed as to the status of Plaintiff's license and precluded summary judgment. (*Id.*).

The State did not object to the materiality element, and so the Court reviews Judge Cavan's findings on it for clear error.[3] The Court finds none and adopts his findings on the matter in full.

Accordingly, disputed facts exist as to whether the statement in the Inspection Report was a representation made about a past or existing material fact.

---

[3] It is odd to the Court that Plaintiff objected to Judge Cavan's conclusion in his discussion of the *Dorwart* claim that Plaintiff did not show he had a property interest in the license because disputed facts existed as to whether Plaintiff had or believed he had the provider license, but that Plaintiff did not object to Judge Cavan's denial of the parties' motion on the negligent misrepresentation claim, in part, because a dispute of material fact existed as to whether Plaintiff had or believed he had a provider's license and therefore whether the statement was material. Because the Court agrees with Judge Cavan that summary judgment should be denied on both claims, the discrepancy does not impact the Court's analysis.

### 2. Reliance

Judge Cavan next found a material dispute of fact existed regarding whether Plaintiff acted in reliance on the statement. (*Id.* at 18). While Plaintiff asserted he acted in reliance by continuing to operate the dispensary and to discuss the merger with Lionheart Caregiving, the State countered that Plaintiff only continued operations without a change to the status quo, which cannot constitute reliance. (*Id.*). Judge Cavan found the parties' competing narrative of events presented a jury question. (*Id.*).

The State objects to Judge Cavan's finding on the grounds that Plaintiff's continued operation of the dispensary and negotiations with Lionheart Caregiving "were not induced" by the statement in the Inspection Report, as required under Montana law. (Doc. 100 at 6–7). The State continues, "Reliance requires some showing that *but for* the alleged misrepresentation, Plaintiff would have cured the violations and avoided revocation of their license." (*Id.* at 7 (citing *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 699 (Mont. 2017))). For instance, if Plaintiff was about to institute a new seed-to-sale tracking system but decided to put off the cost a few weeks based on the statement's indication he had longer to remedy the violations, the State argues reliance may be proven. (*Id.*). "No such circumstance is alleged here." (*Id.*).

Plaintiff responds that he refrained from acting, which can satisfy detrimental reliance, by not shutting down his business. (Doc. 105 at 8). "Had [Plaintiff] known that the cure date was illusory, he could have completed his merger or stopped selling marijuana products." (*Id.*).

The Court disagrees with Judge Cavan that disputed facts exist as to Plaintiff's reliance on the statement. As the State maintains, the record is devoid of any evidence—in particular a declaration by Plaintiff—that he relied on the statement in deciding to continue operating his business and merger negotiations and to delay implementing corrective actions. In fact, Plaintiff's own statement of undisputed facts does not even state as much. Rather, Plaintiff only states DPHHS "admitted that Steven Palmer was *entitled* to rely on the inspection report[.]" (Doc. 78 at 5) (emphasis added) (*See also id.* at 4 ("DPHHS intended that Steven Palmer could rely on the representation that he had until September to remedy the violations.")). Without any evidence that the statement in the Inspection Report caused Plaintiff to refrain from acting, not just evidence that he did not act, the Court cannot find Plaintiff met his burden to rebut summary judgment by showing disputed facts exist. Accordingly, the Court sustains the State's objection to Judge Cavan's finding that disputed facts exist as to the reliance element and rejects Judge Cavan's Findings and Recommendations on the matter. The State therefore is entitled to summary judgment on Plaintiff's negligent misrepresentation claim.

*E.    Damages*

The State next objects to Judge Cavan's conclusion on the damages to which Plaintiff is entitled. (Doc. 100 at 3).  The State contends that Judge Cavan failed to address "the central thrust of the State's motion" on the damages claim: "whether Steven Palmer, as an individual plaintiff, can recover for damages to a business operated under a separate and distinct corporate entity not a party to this litigation, namely, A&S Palmer Enterprises, Inc." (*Id.*).

In briefing in front of Judge Cavan, the State argued generally that Plaintiff cannot demonstrate entitlement to damages. (Doc. 81 at 9–10).  First, the State asserted Plaintiff is only entitled to claim damages incurred by "Steven Palmer d/b/a/ Montana Organic Medical Supply." (*Id.* at 10–12).  The State contended the undisputed facts show no such entity exists, and that M.O.M.S. was operated either as a subsidiary or unregistered assumed business name of A&S Palmer Enterprises or by Shawn Palmer individually. (*Id.* at 11).  Accordingly, Plaintiff cannot recover damages for the M.O.M.S. entity, according to the State. (*Id.*).  The only damages Plaintiff can prove he personally incurred was the loss income for marijuana-infused cookies that he produced and provided to M.O.M.S. dispensary, with gross sales ranging between $3,353 to $16,040 between 2014 and 2018. (*Id.* at 11–12).

The State next argues that even if Plaintiff could recover for damages incurred by M.O.M.S., no damages were actually incurred because the business had no value generally or assigned during the merger. (*Id.* at 12).

Judge Cavan recommended the Court deny summary judgment on the issue of whether Plaintiff could recover damages. (Doc. 99 at 26). First, Judge Cavan concluded that the State admitted that Plaintiff had demonstrated a basis for damages—the individual income for the marijuana-infused cookies between 2014 and 2018. (*Id.* at 26). Second, Judge Cavan concluded that material disputes of fact existed as to whether the business had any value. (*Id.* at 26–27). Last, Judge Cavan concluded that procedural due process claims are actionable for nominal damages. (*Id.* at 27).

The State objects to Judge Cavan's Findings and Recommendations primarily on the grounds that he did not resolve the question of whether Plaintiff can recover for damages incurred by M.O.M.S. because, according to the State, M.O.M.S. was operated by a nonparty to the lawsuit (A&S Palmer Enterprises) and Plaintiff cannot recover damages incurred by a distinct legal entity. (Doc. 100 at 3–4). The State contends its showing that M.O.M.S. in fact belonged to A&S Palmer Enterprises, not Plaintiff, established the requirements for an order pursuant to Federal Rule of Civil Procedure 56(g) limiting the damages to those incurred by Plaintiff personally. (*Id.* at 5).

25

The State also objects to Judge Cavan's conclusion that disputed facts existed as to whether M.O.M.S. incurred damages because the singular Plaintiff in this action cannot recover for such damages. (*Id.* at 4). The State last objects to Judge Cavan's finding that Plaintiff's license had a value of about $250,000 because, according to the State, medical marijuana licenses cannot be legally transferred or sold and therefore have a value of zero. (*Id.* (citing Admin. R. Mont. 37.107.115(6) (2018)).

Plaintiff responds first that the State failed to timely raise what amounts to a real party in interest defense and therefore waives it. (Doc. 105 at 3). Accordingly, damages can properly be awarded to a shareholder in the corporation (here, Plaintiff). (*Id.*). Plaintiff next argues that Plaintiff can recover for damages to M.O.M.S. caused by its shutdown because the facts demonstrate that, until this litigation, Plaintiff was the owner of M.O.M.S. and was treated as such by the State. (*Id.* at 3–4). Notably, M.O.M.S. was transferred to Plaintiff in May 2018. (*Id.* at 3). When Plaintiff applied for his dispensary provider license, he identified his business name as "Steven Ray Palmer" with a registered dispensary at 2918 Grand Avenue, Billings, Montana, 59102. (*Id.* at 4). The state-issued certificate explicitly stated: "Business Name: Steven Ray Palmer." (*Id.*). Further, the Inspection Report identified "Steve Palmer DBA M.O.M.S." as the entity allegedly committing certain violations of law." (*Id.*). Plaintiff goes on to list other facts to demonstrate that,

even in this litigation, the State has treated Plaintiff as the owner of M.O.M.S. and M.O.M.S. as a distinct entity. (*Id.*).

Plaintiff further argues that the State's invocation of Rule 56(g) is an improper objection because it was never raised in front of Judge Cavan and is effectively a new motion improperly filed after the motions deadline. (*Id.* at 5–6).

Last, as to the State's objection regarding the value of the license, Plaintiff retorts that the State has provided no expert explaining why Plaintiff's license is not worth $250,000 and must be transferrable to have value. (*Id.* at 6). Plaintiff contends he was serving 841 patients at the time of his revocation, so the license could be tied to the value of the patients moving to a new provider. (*Id.*).

As an initial matter, the State does not object to Judge Cavan's finding that Plaintiff is entitled to the damages related to him selling the marijuana-infused cookies and nominal damages for the alleged due process violations. The Court reviews Judge Cavan's findings on those damages for clear error. Finding none, the Court adopts his findings as to those categories of damages in full and denies summary judgment.

Next, the Court agrees with Plaintiff that the State's invocation of Rule 56(g) for the first time is an improper objection and, in effect, an improper motion after the motions deadline. Nowhere in the State's briefing in front of Judge Cavan does the State explain or even imply that it is entitled to a Rule 56(g) order, despite its

insistence in its objection that one is proper. Accordingly, the Court overrules this objection as improper.

Moving to the substance of the State's objection, the Court finds that disputed facts exist as to whether M.O.M.S. was actually operated by a nonparty, thus precluding damages to Plaintiff. The circumstantial evidence the State sets forth in briefing in front of Judge Cavan is compelling but not conclusive. (Doc. 81 at 11–12). Further, Plaintiff has put forth ample facts to put in dispute whether Plaintiff was the legal operator of M.O.M.S. Accordingly, even though Judge Cavan did not address this issue, the Court cannot conclude that, as a matter of law, Plaintiff is not entitled to damages incurred by M.O.M.S.

As to the State's claim that the license was valueless, the Court also finds summary judgment is improper on the grounds that the State has provided no evidence that the license is devoid of all value because it was non-transferable.

For these reasons, the Court agrees with Judge Cavan that denial of the State's motion as to Plaintiff's entitlement to damages is proper.

F.    *Tortious Interference*

The State next objects to Judge Cavan's denial of summary judgment on Plaintiff's tortious interference claims. "An action for tortious interference with business relations entails four elements: that the defendant's acts: (1) are intentional and willful; (2) calculated to cause damage to the plaintiff's business; (3) done with

28

the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) result in actual damages and loss." *State Med. Oxygen & Supply, Inc. v. Am. Med. Oxygen Co.*, 883 P.2d 1241, 1243 (Mont. 1994).

Plaintiff asserted two bases for his tortious interference claim. First, Plaintiff alleged the State interfered with his relationship with cardholders who purchased marijuana from his dispensary by advising the cardholders Plaintiff's provider license was being revoked. (Doc. 3). Second, Plaintiff alleged the revocation interfered with the prospective merger with Lionheart Caregiving. (*Id.*).

The State argued in front of Judge Cavan that both claims fail because the alleged interferences were justified by Plaintiff's violation of laws intended to protect to the public and did not result in actual damage or loss. (Doc. 81 at 23). As to the interference with the cardholders, Plaintiff responded that one of the laws the State cited him for was not in effect at the time of the revocation, and that the remaining violations did not create exigent circumstances warranting immediate revocation and notification to the cardholders. (Doc. 90 at 29).

Judge Cavan recommended the Court deny summary judgment because disputed facts existed with both claims. (Doc. 99 at 29–30). As to the cardholder claim, Judge Cavan found the record supported both parties' positions on exigent circumstances. (*Id.*). As to the merger, whether the State's interference caused actual damage or loss depends on whether Plaintiff had maintained or relinquished

29

his provider license. (*Id.* at 30). Since disputed facts existed as to the status of his provider license, Judge Cavan recommended the Court deny summary judgment on the matter. (*Id.*).

The State's objections merely repeat the arguments it made in front of Judge Cavan concerning both alleged forms of interference. (*Compare* Doc. 81 at 23 and Doc. 94 at 14 with Doc. 100 at 8–10). The State's additional detail on which statutes Plaintiff allegedly violated merely emphasizes its previous position that the interference was justified by Plaintiff's violation of state law.

Reviewing his findings for clear error, the Court finds none and adopts Judge Cavan's Findings and Recommendations on the issue in full. Denial of the State's motion for summary judgment as to the tortious interference claim is proper.

G.   *Negligence*

The State last objects to Judge Cavan's failure to address its motion on Plaintiff's negligence claim. (Doc. 100 at 13).

Somewhat confusingly, Plaintiff groups his negligence and negligent misrepresentation claim. The Complaint alleges in a single count:

- The DPHHS, Wiebe and Grantham had a duty to avoid taking unreasonable acts that would cause MOMS's injury.

- Defendants also had a duty to reasonably follow the law and reasonably act within the bound of the law. Defendants breached this duty when it [sic] exceeded the scope of statutory and administrative rules in conducting their obligations and did so without any reasonable justification.

- DPHHS, Wiebe and Grantham violated these duties by taking actions (or by their agents taking actions) that exceeded their authority and jurisdiction and taking those actions without any reasonable basis believing the actions were necessary or allowed.

- Defendants further violated these duties by representing to MOMS that they had until September 18, 2018, to cure any alleged statutory or administrative violations found at MOMS's dispensary or the cultivation cite. Indeed, Defendants made this statement in writing.

- Defendants further violated their duties by emailing the Billings Police Department and giving them false information that that the District Court had approved the license revocation and that MOMS was illegally selling marijuana and marijuana infused products.

(Doc. 3 at 11–12).

Judge Cavan addressed the second allegation of a violation of the State's duties (bullet four), as discussed in the negligent misrepresentation section of this order. He also resolved the third allegation (bullet five), which the Court will address in the subsequent section. However, the State is correct that Judge Cavan failed to address the parties' negligence arguments. (*See* Doc. 81 at 27; Doc. 90 at 30; Doc. 94 at 15).

The State argues summary judgment on Plaintiff's negligence claim is proper because it is undisputed that the State did not cause Plaintiff to lose his medical marijuana business. (Doc. 100 at 13). Rather, Plaintiff's own violations of law caused him to lose his business. (*Id.* (citing Doc. 82 at 23–24)).

Plaintiff disagrees, arguing that he lost his business because DPHHS failed to operate according to its own requirements and its representation that it would not revoke Plaintiff's license until September. (Doc. 105 at 16).

The Court agrees with Plaintiff that summary judgment is improper because disputed facts exist as to whether DPHHS followed its own rules regarding revocation procedures and whether DPHHS was justified in revoking Plaintiff's license prior to the date listed in the Inspection Report, as discussed above. The reasonableness of these actions is a question for the jury, and therefore summary judgment is improper.

### H.   Remaining Summary Judgment Issues Not Objected To

Plaintiff does not object to Judge Cavan's recommendation that the Court deny Plaintiff's motion for summary judgment and grant the State's motion for summary judgment as to his *Dorwart* claims based on the right to privacy and employment, negligent representation claim concerning DPHHS's email to the Billings Police Department, conspiracy claim, and defamation claim. The Court reviews Judge Cavan's Findings and Recommendations on these claims for clear error. It finds none and adopts his Findings and Recommendations on these claims in full.

## V.   Conclusion

IT IS SO ORDERED:

(1) Judge Cavan's Findings and Recommendations (Doc. 99) are REJECTED as to his finding that MAPA governed the due process procedures, his finding that disputed facts exist as to whether Plaintiff relied on the statement in the Inspection Report, and his recommendation the Court deny summary judgment on Plaintiff's negligent misrepresentation claim.  His Findings and Recommendations are ADOPTED as to all other issues.

(2) Plaintiff's Motion for Collateral Estoppel (Doc. 74) is DENIED.

(3) Plaintiff's Motion for Partial Summary Judgment on Count II and VI (Doc. 79) is DENIED.

(4) The State's Motion for Summary Judgment (Doc. 80) is GRANTED as to Counts II, V, and VII; GRANTED IN PART as to Count VI (employment and privacy rights); and DENIED as to all remaining claims.


DATED this 27th day of March, 2024.

*Susan P. Watters*

SUSAN P. WATTERS
United States District Judge